TUCKER, Judge.
The court having by an unanimous opinion, in the case of Beaumarchais, decided that the contract with Mr. Chevallie as his agent, entered into on the 8th of June, 1778, was not a contract in specie, but for the paper money of this state then current, I hold myself bound by that opinion, and shall therefore proceed to enquire in what manner, or rather at what rate of depreciation that contract ought now to be settled.
The legislature, by their act of October 1781, cb. 22, sect. 5, admit that there may be cases where the scale established by that act would be unjust; and in such cases permit a departure from it. Perhaps, in all cases where the commonwealth had made a special contract with any individual, the sound interpretation of the act, according to the dictates of moral justice, would be, that the scale should be totally disregarded. Many arguments might, I think, be advanced in favour of such an interpretation; but I shall pass over them, and proceed to state the circumstances of this case, in the precise terms in which they have been stated by the committee of the house of delegates appointed for that purpose, and were afterwards agreed to by the house. As this statement was made the ground of rejecting the petition of Mr. Chevallie, the facts therein stated must be supposed to have been fully proved, and are by that document admitted in their fullest extent.
‘ ‘In the month of June, 1778, the Peer Rodrigue, a vessel completely manned and fitted for war, as well as for commerce, by Monsieur de Beaumarchais of Prance, arrived at York town in Virginia with a valuable cargo of goods well adapted to the American market; immediately on the arrival of the said vessel as aforesaid, a treaty was entered into with a Monsieur Chevallie, a Prench gentleman, who came *in with her, and was empowered to dispose of the goods on board, for the purchase of her cargo on account of the government. In virtue of the said treaty, a contract was entered into in the *898 said month of June 1778, whereby the cargo of the Feer Rodrigue (some specified articles excepted) was sold to the government of Virginia, at the rate of six shillings current money for each livre, paid for the goods in France. Monsieur Chevallie agreeing to receive, in part payment, 2000 hogsheads of tobacco, weighing 1000 libs, weight each, at per hundred; for the residue of the purchase money, certificates were to be given him, which should carry an interest of six per cent, till paid.
“The usual rate at which goods well assorted then sold by wholesale, was four for one on the prime cost; that is to say, the value of four dollars in specie for one dollar laid out in the original purchase of the goods. It was in the power of Monsieur Chevallie to have sold the cargo of the Feer Rodrigue at that time to individual merchants, had he not preferred a contract with the state.
“The expense of importing goods into this commonwealth from Europe at the time of the said contract, considerably exceeded their prime cost. The value of a livre in Virginia money is 13 pence and 1-3 of a penny: By .the scale of depreciation, paper money had then sunk to five for one, so that one livre was equal to Ss. 6d. and 2-3 of a penny. Whereby, if the contract be submitted to the scale of depreciation, the goods of Monsieur de Beaumarchais will have been purchased by the state for less than one half what they actually cost him; and for about one fourth of the current price at the time of the purchase.”
This statement of facts, and the deposition of Picket, (neither of which was objected to in the court o'f chancery) exhibit to me a case calling loudly for a departure from the scale established by the act. Had the chancellor departed further from it than he has in his decree, I should have thought the decree more just and equitable than it is at present. Was there a probability after the decision in Beaumarchais’s *case, that this court would reverse it for that cause, I should most heartily concur in the reversal. As that is not probable, my opinion is, that the decree be affirmed; thereby fixing the rate of depreciation at four for one only', instead of five for one, at which rate the complainant has been paid.
ROANE, Judge.
The opinion of this whole court has been given the other day, that a decision, by an equally divided court, only settles the cause, but not the question or principle. It is urged, however, in this case, that it settles all questions on the same contract. ' But this is carrying the effect further than the law carries it; and, on general principles, I see nothing reprehending different decisions, when arising out of the same contract, -which would not equally apply to different cases depending on the same title, question, or principle.
On the merits of this case, as my opinion on the case of Beaumarchais has not been published, and may be unknown to many who now hear me, I will repeat the observations I then used on the particular question of the construction of the contract; premising that having often pondered that case, since its decision, I am entirely con-j firmed in the opinion then formed and delivered. (Here judge Roane read part of his opinion in that case since published in 3 Call, 149.)
Such, sir, is my opinion upon the true construction of the contract in question. Whatever opinion ultimately prevailed in Beaumarchais’s case, this court was unanimously of opinion, that that a contract was one for current money, and not specie. The chancellor was also of the same opinion, but he arrogated the power to set up a new contract, entirely a different one from that which was actually entered into.
All the judges, therefore, concurred in the opinion that it was a paper money contract; and the only question in the court of appeals was, Whether the ideal scale of 4 for 1, or the legal scale of S for 1 should prevail. It is certain, therefore, *that the chancellor has borne no testimony in favour of this variation of the scale: the appellee himself has borne no such testimony. He has absolutely denied, that the parties contemplated a scale of 4 for 1, by denying that paper money was at all contemplated. In all his petitions to the legislature, he contended for specie, and specie only. Shall we set up a rule for the decision of this cause which the parties themselves have reprobated? I consider that the petitions, applications, and conduct of the appellee (Beaumarchais) have amounted to an acknowledgment, on his part, that the parties did not contract under the idea of a depreciation of 4 for 1. Even in this very appeal he disclaims the idea: nothing of the sort can, even in substance, be deduced from the bill. Eet those who stickle for great precision in bills in equity; who say, that the point in question must be charged totidem verbis; who stickle for' a perfect correspondence between the probata and the allegata; reconcile themselves to this case, where the ground set up by a moiety of the court in that case to warrant their decision, was not only not charged in the bill, but was absolutely disclaimed, and disavowed; and not only in the bill, but in all the other proceedings. This ideal scale, therefore, was quite a new point, never contended for by the appellee, and started, for the first time in the court of appeals. The whole court were doubtless of opinion, and justly of opinion, that, in the events which did'happen, the appellee had made a losing bargain; and the chancellor and two of the judges of this court were disposed to relieve him, by setting up a new contract.. Their respective decisions, as I think, differed not in principle, but only in degree. I claim, however, no right to say, that I am correct in this idea as it respects the judgment of this court in that case. This is only my opinion.
But however that matter may be, this court was not only unanimous, that this contract was a paper money ■ contract, but also that the construction of the contract was to be made exclusively upon the written contract itself, and the deposition *of Mr. Picket. I speak with confidence of the opinion of the late venerable president, whose opinion I have before me: the opinion of the other judge, who agreed with him on that occasion, and who *899 is now present, I applied for, but could not obtain from Mr. Call; but if I am not correct, he will please now to set me right. The late president commences the part of his opinion, now in question, by saying, “I proceed to consider the question upon the merits; which depends upon the written contract, and the testimony of Mr. Picket.” He justly threw out of the case, as not being legal testimony, all the allegations of the parties (making in their own favour) and the reports of committees, and even the résolutions of one branch of the legislature. He well knew the incompetence of one branch of the legislature to bind, or affect, the interests of the commonwealth. He enquired, and enquired in vain, for the sanction of the senate. He well knew the manner of doing business in the legislative councils, and the latitude which is particularly taken in relation to testimony. At any rate, he knew that we could only receive legal testimony, or testimony sanctioned by the agreement of the parties. His great genius well knew, that legislative bodies may not only dispense with the legal rules of evidence, but be even bountiful of the public money. These are powers I utterly disclaim, and which cannot, and I trust never will, be arrogated by our courts of justice.
Notwithstanding, however, this great authority, this unanimous opinion of the whole court upon this point, the judge who has gone before me has deemed himself at liberty to go into other testimony; to go into the acts of one branch of the legislature only; and infer an admission which is to bind the commonwealth. An admission which (contained only in the preamble to the resolution of the house of delegates) is utterly inconsistent with another part of the same preamble, and utterly overruled by the resolution which was passed thereupon. This contradiction between the two is absolutely admitted and complained of by Mr. Beaumarchais’s agent in his petition to the assembly in 1793, page 63 of the record.
*Of this supposed admission, however, the most that can be said is, that it amounts to an acknowledgment on the part of the house, that the agent of Beaumarchais had made a bad bargain. (See the preamble and resolution, page 57, of the record.) In the events which have happened he has made a bad bargain: but if our money had appreciated it would then have been a good bargain. If that paper money had become equal to specie; as, by the contract with the state, Mr. Beaumarchais was to receive six shillings for each livre, which is nearly six for one, it would have been a better contract than that which the committee state was usual, i. e. “at the rate of four dollars specie for one laid out in the original purchase of the goods.” Shall we not permit a party to make his own bargain in his own way? And if, as the appellee alleged in that case, depreciation was not sensibly known, we cannot say, (as at the time,) that his bargain was a bad one. Our construction is not to be affected by posterior events or circumstances. There are, besides, other considerations which might be taken into the account; such as the superior credit of the state; the advanced rate of interest; and the desire, so much vaunted of, to serve the cause of liberty.
But I will ask what credit is due to this report? At most it is, as I have before said, but an act of one branch of the legislature, not competent to bind the commonwealth. It may have been, and probably was, rejected in the senate, or, perhaps, never carried to that body, being adverse to the claim of the petitioners; but this is not all; the report of the committee is amended in the house, and they resolve to adhere to the solicitor’s settlement at 5 for 1. The house strikes out the resolution of the committee, the material part; but, through negligence, or inattention, permit the introductory part to stand as it was originally reported. If the two are supposed to be in conflict, the resolution must outweigh the preamble. But wherefore select one part of the preamble and reject the rest? In page 57, the same preamble, as I have already said, had, previously, declared that *as the contract was for current money; thereby agreeing with the resolution, and with the proofs in the cause, and overruling any inference to be drawn from the before mentioned part of the same preamble.
But, although this branch of the legislature, even were its acts ever so unequivocal, is not competent to bind the commonwealth, yet a party may bind himself: and in page 8 of the record, the executive council have certified, that Mr. Beaumarchais’s agent “declared himself well satisfied with the settlement by the solicitor.”
I believe, however, that we ought to throw all these pieces of testimony out of the cause, and adhere only to the legal testimony : To reject that of the committee of assembly, because the testimony, on which things “may appear to them,” is often inferior to legal testimony; and that of the council; because it is a declaration by a party seemingly in its own favour.
But if any inference is to be drawn from the preamble to the resolutions, it cannot be to vary the scale from 5, to 4 for 1. Even that variation would not save the party from the loss supposed to result from the bargain in that part of the preamble. To make the decision any how correspond with that statement in the preamble, the judge, who preceded me, should either decree the whole sum in specie, or, as was done by the chancellor, make another new contract for the parties. In making this new contract, he should not stop short at the point of 4 for 1, assumed by the moiety of this court, for that would not protect him from the loss arising from his bargain. In making that new contract, on the ground of the supposed admission, he will be pleased to take his pen, and, with the aid of arithmetic, stop precisely at that point, which while it disclaims any profit from the speculation, will exactly and solely protect Mr. Beaumarchais from loss; and this, upon data not existing at the time of the contract, but arising up several years after by the establishment of the scale of depreciation.
*The judge, who preceded me, considers the report of the committee as *900 evidence, because it was not objected to by the attorney general. If this be the case, the consequence would be truly alarming: that every thing, which is not objected to, is admitted! But is this report only admitted in part? And, if admitted in toto, this particular paragraph is merged and lost in the two contradictory parts before stated. Besides this rule, if it works at all, must work- both ways; and how 'does it operate against the appellee? It lets in the certificate, before stated, from the books of the council: which goes conclusively to shew, that the appellee was satisfied with the settlement by the solicitor. I am of opinion that the decree should be reversed.
FLEMING, Judge.
I was of opinion, in the former suit, that the contract was subject to the scale of four for one only; and, as I see no cause to change it, I am of opinion that the decree ought to be affirmed.
CARRINGTON, Judge.
I thought, in the former cause, that the contract was subject to the scale of five for one; and I still retain that opinion. But, as the judges are equally divided upon the question, the decree is to be affirmed.